IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| HEARTCOR SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HAROLD STRANDQUIST, <br><br> Defendant. | Case No. 3:21-cv-50433 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff HeartcoR Solutions, LLC, sued its former president, Defendant Harold Strandquist, alleging a breach of fiduciary duty and fraudulent misrepresentations. *See* Dkt. 1, at ¶¶ 5, 54–65. The parties engaged in a series of settlement negotiations, including mediation. The mediation was successful. They reached a settlement agreement in principle, which Mr. Strandquist signed. *See* Dkts. 19, at 1; 34[1].

As the parties reduced the agreement in principle to a formal settlement agreement Mr. Strandquist got cold feet. Dkt. 28, at 1. Mr. Strandquist grew "recalcitrant" and became "unwilling to settle the case on the terms agreed upon by the parties during mediation." *Id.* Left with no other options, HeartcoR now brings a

---

[1] Sealed documents that the Court relied on are no longer under seal. *Baxter Int'l Inc. v. Abbott Labs*, 297 F.3d 544, 545 (7th Cir. 2014).

1

motion to enforce and adopt the terms of the settlement reached during mediation. Dkt. 33. For the following reasons, the Court grants HeartcoR's motion.

## PROCEDURAL POSTURE

The summary of the parties' settlement negotiations is taken from their joint status reports.

On February 7, 2022, the parties jointly reported that they were engaged in settlement discussions and agreed to mediate this matter. Dkt. 14, at 2. The parties attended mediation on May 18, 2022. Dkt. 19, at 1. There, according to the Mediator's Certificate of Session, a settlement agreement had been reached, and HeartcoR was responsible for "prepar[ing] the settlement agreement and stipulation to dismiss." Dkt. 21. That same day, Mr. Strandquist signed a "Settlement Term Sheet" detailing the terms of the settlement reached at the mediation. *See* Dkts. 34; 41, at ¶ 5. They then began drafting the formal settlement. Dkt. 19, at 1. The drafting continued over the next several months. Dkts. 19, at 1; 23, at 1; 25, at 1; 28, at 1. They sent edits and preferences back-and-forth, and tried to finalize a formal settlement agreement. *Id.*

Come September 2022, the parties' efforts to reduce the Settlement Term Sheet to a formal settlement agreement hit a wall. Dkt. 28, at 1. Mr. Strandquist "was unwilling to settle the case on the terms agreed upon by the parties during mediation." *Id.* In the September joint status report, the parties explained that Mr. Strandquist's counsel had "engaged in a number of communications with [Mr. Strandquist] regarding the settlement terms agreed upon in mediation and the corresponding terms of the proposed settlement agreement, however [Mr.

2

Strandquist] remained recalcitrant." *Id.* Mr. Strandquist's attorney withdrew from the matter. Dkts. 29, 31.

For three months, Mr. Strandquist tried to find a new attorney. Dkts. 32, 36, 38. The Court granted him multiple extensions to do so, and cautioned him that if he was unable to do so, he would have to represent himself. *Id.* After the time afforded to Mr. Strandquist lapsed, HeartcoR moved to enforce and approve the Settlement Term Sheet. Dkts. 33, at ¶ 1; 33-1; 34; 38. Mr. Strandquist responded, arguing that he signed what he calls a "tentative terms sheet." Dkt. 41, at ¶¶ 6, 7. He signed the "tentative terms sheet" allegedly under duress: the "entire building was locked down and [he] was unable to escape the mediation." Dkt. 41, at ¶ 3. He claims to have been held "against [his] will." *Id.* What's more, signed the "tentative terms sheet" after relying on the mediator's statement that "a Final Settlement Agreement would also require final signature with a final terms sheet." *Id.* In other words, the parties would "negotiate" a final settlement agreement "predicated on the signed terms sheet. *Id.* at ¶ 7. He believes that HeartcoR has not, and will not, negotiate a final settlement in good faith. *Id.* at ¶¶ 5, 7.

## ANALYSIS

"[A] settlement agreement is generally enforceable if there was mutual assent to material terms." *Washington v. Chi. Bd. of Educ.*, 786 F. App'x 602, 606 (7th Cir. 2019); *Caramel Crisp, LLC v. Putnam*, No. 19 C 2699, 2020 U.S. Dist. LEXIS 258258, at *2 (N.D. Ill. Oct. 16, 2020). Mutual assent requires a meeting of the minds. *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 881 (N.D. Ill 2020). The

parties must "share a common understanding of the essential terms of the agreement." *Id.* "The most common way by which mutual assent can be shown is through a signature." *Arbogast v. Chi. Cubs Baseball Club, LLC*, 194 N.E.3d 534, 543 (Ill. App. Ct. 2021). The party seeking to enforce the settlement agreement has the burden of establishing the existence of an enforceable settlement agreement. *Hyde Park Union Church v. Curry*, 942 F. Supp. 360, 363–64 (N.D. Ill. 1996).

The mediator's Certificate of Session reflects that a settlement agreement was reached. Dkt. 21. Mr. Strandquist signed a document titled "Settlement Term Sheet"– not "tentative terms sheet"–that very same day. Dkts. 34, 41. After signing the document, Mr. Strandquist became "charged with knowledge of and assent to its terms." *Arbogast*, 194 N.E.3d at 543. So, Mr. Strandquist was well aware that the Settlement Term Sheet includes material terms such as payment, costs, disclaimers of liability, and releases of claims. Dkt. 34. He also knows that the Settlement Term Sheet does not include hedging or non-committal language explaining that it was an agreement-to-agree or a starting point for future negotiations, as he suggests. *Id.* Thus, although the Settlement Terms Sheet may not have been reduced to a final form, he still signed a settlement agreement.

Mr. Strandquist's argument that he signed the agreement under duress does not hold water. Dkt. 41, at ¶ 3. "Duress is defined as the imposition, oppression, undue influence or the taking advantage of the stress of another whereby one is deprived of the exercise of his free will." *Moore v. Cooper*, No. 94 C 788, 1996 U.S. Dist. LEXIS 5387, at *5 (N.D. Ill. April 24, 1996). He claims the building where the

4

mediation occurred was under lockdown and he was "unable to escape the mediation." Dkt. 41, at ¶ 3. He adds, without any more detail, that he was held against his will. *Id.* Mr. Strandquist has failed to explain how these circumstances overcame the "exercise of his free will." *See Moore*, 1996 U.S. Dist. LEXIS 5387, at *5. Indeed, "HeartcoR and its counsel attended the mediation virtually, and therefore, were not even in the same building" as Mr. Strandquist. Dkt. 44, at 4 n. 2.

Lastly, HeartcoR argues that it should be awarded attorney's fees for having to file its motion to enforce, and asks permission to file a separate fee petition. Dkt. 33, at ¶ 7. As HeartcoR explains, the Settlement Term Sheet provides that "[t]he prevailing party shall receive its fees and costs for enforcing this agreement."[2] Dkt. 34, at ¶ 12. The language that Mr. Strandquist assented to is clear and unambiguous. Thus, the Court grants HeartcoR's request for attorney's fees and grants HeartcoR permission to file a separate fee petition. Dkt. 33, at ¶ 7.

## CONCLUSION

Accordingly, HeartcoR's motion to enforce and approve the settlement agreement [33] is granted. HeartcoR may submit a separate fee petition and is instructed to do so by July 10, 2023.

Date: June 5, 2023

_____
Honorable Iain D. Johnston
United States District Judge

---

[2] HeartcoR also relies on 28 U.S.C. § 1982. *See* Dkt. 33, at ¶ 7. § 1928 applies to patent infringement actions and is irrelevant to this case. *See* § 1928.